**Robert L. ADAMS, Appellant,**

v.

**GEORGE W. COCHRAN & COMPANY, INC., Appellee.**

No. 89–374.

District of Columbia Court of Appeals.

Argued Oct. 30, 1990.
Decided Sept. 17, 1991.

Roy L. Kaufmann, with whom Seth B. Popkin, Washington, D.C., was on the brief, for appellee.

Before TERRY and FARRELL, Associate Judges, and NEWMAN, Senior Judge.[*]

TERRY, Associate Judge:

Appellant Adams sued George W. Cochran & Company ("Cochran"), his former employer, for wrongful discharge after Cochran had fired him for refusing to drive a truck that lacked a required inspection sticker. Adams sought lost wages and damages for emotional distress. When Cochran moved for summary judgment, the court granted the motion in part, ruling, without further explanation, that Adams could not recover any damages for emotional distress. Adams then filed two successive motions for leave to amend his complaint in order to add a claim for punitive damages. Both motions were denied. The case later went to trial, and the jury returned a verdict in favor of Adams, awarding him $7094.00 in lost wages. On this appeal Adams challenges the three pre-trial orders: the one granting Cochran summary judgment on the issue of liability for emotional distress and the two denying Adams leave to amend his complaint. We affirm the latter two orders, but we conclude that the court erred in granting Cochran summary judgment on the issue of emotional damages. We therefore reverse and remand for a new trial on that issue.

## I. FACTS

Cochran fired Adams from his job as a delivery truck driver. Adams thereafter filed this action, alleging that Cochran had wrongfully discharged him after he had refused to drive a truck that did not have an inspection sticker on its windshield. Adams alleged that Cochran's actions violated public policy in that Cochran had fired him for his refusal to violate District

H. Vincent McKnight, Washington, D.C., for appellant.

[*] Judge Newman was an Associate Judge of the court at the time of argument. He was commis-

of Columbia law.[1] He sought damages for lost wages and for emotional distress.

Cochran answered the complaint and then moved for summary judgment on the ground that Adams was an at-will employee and therefore not entitled to damages, either for wrongful discharge or for emotional distress. Cochran argued that Adams had not alleged any breach of an employment contract and that District of Columbia law does not recognize the tort of wrongful discharge of an at-will employee. It also contended that Adams was not entitled to damages for emotional distress, either as an element of his claim for wrongful discharge or as a separate cause of action. The court denied Cochran's motion for summary judgment on the claim of wrongful discharge,[2] but granted it with respect to Adams' request for damages for emotional distress. The court's order, however, did not specify whether Adams was barred from recovering such damages for emotional distress as an element of wrongful discharge or as a separate cause of action, or both.

Adams then filed a motion, pursuant to Super.Ct.Civ.R. 15, for leave to amend his complaint by adding a claim for punitive damages. That motion was denied on the ground that the proposed amendment sought damages for emotional distress, which was precluded by the court's earlier order. A second motion to amend the complaint for the same purpose was denied without opinion.

At trial Cochran defended against Adams' claim by introducing evidence that Adams was fired because he had become a difficult employee and had refused to take delivery runs on prior occasions without good reason. The case went to the jury, however, on the theory that Adams had been discharged solely for his refusal to violate District of Columbia law by driving a truck that lacked an inspection sticker. The court also instructed the jury that it could not award any more than Adams' lost wages, which the evidence showed was $7094.00. The jury returned a verdict in favor of Adams in that amount.

## II. WRONGFUL DISCHARGE

### A. *The law in the District of Columbia*

■ It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all. *Wemhoff v. Investors Management Corp.,* 528 A.2d 1205, 1208 n. 3 (D.C.1987); *Taylor v. Greenway Restaurant, Inc.,* 173 A.2d 211 (D.C.1961); *Pfeffer v. Ernst,* 82 A.2d 763, 764 (D.C.1951) (citing cases). It is undisputed that Adams' employment with Cochran was at-will. Adams asks us to recognize a public policy exception to this at-will doctrine and to hold, for the first time, that an employer engages in tortious conduct when it fires an at-will employee for that employee's refusal to break the law at the employer's direction.

"Public policy" exceptions to the general rule have been urged upon this court before, but thus far we have not recognized any such exceptions. *See Ivy v. Army Times Publishing Co.,* 428 A.2d 831 (D.C.1981). As published, *Ivy* was not a decision on the merits but merely an order denying a petition for rehearing en banc in a case which had been decided by an unpublished Memorandum Opinion and Judgment. Four judges dissented from the denial of rehearing en banc, maintaining that this court should address the legality of terminating an at-will employee in violation of a "statutorily declared public policy."[3]

---

sioned as a Senior Judge on March 11, 1991.

1. It is illegal to operate a motor vehicle in the District of Columbia without a current inspection sticker. 18 DCMR § 602.4 (1987). The trial court dismissed, as not supported by the evidence, Adams' claims that the truck was also in violation of other provisions of the motor vehicle regulations. Adams does not challenge that ruling on appeal.

2. Cochran does not contest this ruling. For purposes of this appeal, Cochran concedes that it fired Adams for his refusal to break the law by driving the truck without an inspection sticker.

3. The plaintiff in *Ivy* had alleged that he was fired in retaliation for his testimony, adverse to his employer, before an administrative agency investigating employment practices by that employer. 428 A.2d at 832.

*Id.* at 833 (Ferren, J., dissenting).[4]

More recently we revisited the issue in *Sorrells v. Garfinckel's, Brooks Brothers, Miller & Rhoads, Inc.,* 565 A.2d 285 (D.C.1989). The plaintiff in that case was an at-will employee who, after being fired, sued her former employer for wrongful discharge, alleging that her discharge had been contrary to District of Columbia public policy. The trial court granted the employer summary judgment on the issue of wrongful discharge. The plaintiff appealed to this court, arguing *inter alia* that her discharge violated the policy behind the District of Columbia Human Rights Act, D.C.Code §§ 1–2511 *et seq.* (1987 & 1990 Supp.). She did not allege an actual violation of the Act, however, but instead urged us "to 'broaden' the policies expressed in the Human Rights Act and to fill a perceived 'gap' in the Act." 565 A.2d at 289. This court, ruling that "no 'statutorily declared public policy' supports appellant's claim of wrongful discharge in this case," declined to hold that the plaintiff's discharge was in violation of public policy. *Id.* (citation omitted). In so ruling, we were careful to point out that we have never recognized a public policy exception to the at-will employment doctrine. *Id.*

Cochran argues that the public policy issue raised by Adams is not properly before this court and is, in any event, irrelevant. It maintains that the sole issue on appeal is the correctness of the award of damages, and that in order to resolve that issue, we need not decide whether to recognize an exception to the rule that a fired at-will employee may not sue his or her employer for wrongful discharge. Cochran is mistaken. Adams is seeking, *inter alia,* a reversal of the trial court's ruling that he was not entitled to recover damages for emotional distress, but he concedes that he suffered no physical injury as a result of his discharge. Nevertheless, District of Columbia law allows "a plaintiff [to] recover damages for mental suffering unaccompanied by physical injury as part of his recovery for an intentional tort." *Parker v. Stein,* 557 A.2d 1319, 1322 (D.C.1989) (citations omitted). A reversal of the trial court's order denying Adams recovery for emotional distress would thus be an implied holding that wrongful discharge for refusing to violate the law is an intentional tort, *i.e.,* a recognition that there is a public policy exception to the well-established at-will doctrine. We must therefore address the issue directly, for we cannot decide whether Adams is entitled to damages for emotional distress without first deciding whether he has a cause of action and, if so, whether that cause of action sounds in tort or in contract.

### B. *The law in other jurisdictions*

The leading case on the public policy exception to the at-will employment doctrine is *Petermann v. International Brotherhood of Teamsters Local 396,* 174 Cal.App.2d 184, 344 P.2d 25 (1959). In that case the plaintiff, an at-will employee of the defendant, a labor union, was subpoenaed to testify before a legislative committee about certain activities of that union. An officer of the union, acting as its agent, directed the plaintiff to testify falsely under oath at the hearings. After the plaintiff testified truthfully, the union fired him. The plaintiff then sued the union for wrongful discharge. The trial court granted the union's motion for summary judgment, but on appeal that judgment was reversed. The appellate court held that the right to discharge an at-will employee may be limited by considerations of public policy. The court noted that the concept of public policy was a vague one, not subject to precise definition, but concluded that the state had a declared public policy against perjury because perjury was a crime under

---

**4.** The fact that the published opinion in *Ivy* is only a dissent from the denial of rehearing en banc has not prevented other courts from citing that dissent for the proposition that the District of Columbia does (or would) recognize the tort of wrongful discharge in violation of public policy, *see, e.g., Adler v. Columbia Historical Society,* 690 F.Supp. 9, 16–17 (D.C.1988); *Newman v. Legal Services Corp.,* 628 F.Supp. 535, 538 (D.C.1986), as well as for the proposition that the District of Columbia does not, *see Hall v. Ford,* 272 U.S.App.D.C. 301, 313, 856 F.2d 255, 267 (1988).

the state criminal code. The court then said:

> The threat of criminal prosecution would, in many cases, be a sufficient deterrent upon both the employer and employee, the former from soliciting and the latter from committing perjury. However, in order to more fully effectuate the state's declared policy against perjury, the civil law, too, must deny the employer his generally unlimited right to discharge an employee whose employment is [at will], when the reason for the discharge is the employee's refusal to commit perjury.... To hold that one's continued employment could be made contingent upon his commission of a felonious act at the instance of his employer would be to encourage criminal conduct upon the part of both the employee and employer and would serve to contaminate the honest administration of public affairs. This is patently contrary to the public welfare.

*Id.* at 189, 344 P.2d at 27. The court concluded that the plaintiff had stated a cause of action for wrongful discharge.[5]

It seems to be universally accepted that an employer's discharge of an employee for the employee's refusal to violate a statute is a wrongful discharge in violation of public policy. *See, e.g., Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985) (en banc); *Tameny v. Atlantic Richfield Co., supra* note 5; *Girgenti v. Cali–Con, Inc.,* 15 Conn.App. 130, 544 A.2d 655 (1988); *Phipps v. Clark Oil & Refining Corp.,* 408 N.W.2d 569 (Minn. 1987); *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985); *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834 (1983). These and other cases have made clear that an employer cannot be allowed to require his or her employees to break the law as a condition of continued employment. As the court noted in *Petermann,* to permit further employment to be

conditioned upon the employee's commission of an illegal act would "encourage criminal conduct upon the part of both the employee and employer and ... is patently contrary to the public welfare." *Petermann, supra,* 174 Cal.App.2d at 189, 344 P.2d at 27.

Most courts that have addressed the issue have concluded that an action for wrongful discharge in violation of public policy is an action in tort, rather than in contract. *See, e.g., Tameny v. Atlantic Richfield Co., supra* note 5, 27 Cal.3d at 175, 610 P.2d at 1335, 164 Cal.Rptr. at 844; *Parnar v. Americana Hotels, Inc.,* 65 Haw. 370, 380, 652 P.2d 625, 631 (1982) (employer liable in tort for wrongfully discharging employee who cooperated with Department of Justice investigation); *Girgenti v. Cali–Con, Inc., supra,* 15 Conn. App. at 137, 544 A.2d at 659; *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 132, 52 Ill.Dec. 13, 17, 421 N.E.2d 876, 880 (1981) (wrongful discharge to terminate employee for reporting crimes of co-workers to law enforcement officials); *Phipps v. Clark Oil & Refining Corp., supra,* 408 N.W.2d at 571. Liability is grounded in the principle that the employer may not retaliate against an employee by discharging that employee for refusing to break the law. *See* W. PROSSER & W. KEETON, THE LAW OF TORTS § 130, at 1027–1028 (5th ed. 1984) (hereafter PROSSER). The employer engages in tortious conduct by affirmatively forcing the employee to choose between breaking the law and keeping his job. *See Winters v. Houston Chronicle Publishing Co.,* 795 S.W.2d 723, 724 (Tex.1990), *aff'g* 781 S.W.2d 408 (Tex.Ct.App.1989). The wrongful discharge of an at-will employee in violation of public policy is thus an intentional tort. *See* PROSSER, *supra,* § 130, at 1029 (most wrongful discharge cases "appear to be grounded in intent rather than in negligence").[6]

---

**5.** The court in *Petermann* never stated whether the cause of action sounded in contract or in tort. California now recognizes, however, that wrongful discharge in violation of public policy is a tort. *Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 610 P.2d 1330, 164 Cal.Rptr. 839 (1980) (wrongful discharge, actionable in tort,

to fire employee who refused to engage in illegal price-fixing).

**6.** At least two jurisdictions recognize a cause of action for wrongful discharge in violation of public policy, but conclude that the action is in contract. *Sterling Drug, Inc. v. Oxford,* 294 Ark.

On the subject of damages the case law is less instructive, but there is at least one case that offers some guidance. In *Smith v. Atlas Off-Shore Boat Service, Inc.*, 653 F.2d 1057 (5th Cir. Unit A August 1981), a seaman alleged that he was fired in retaliation for filing a personal injury action against his employer. The Fifth Circuit held that the seaman had stated a cause of action in tort "under the general maritime law," *id.* at 1058,[7] and elaborated on the measure of damages available to him. The court held that the wrongfully discharged employee could recover compensatory damages not only for economic loss, but also for any emotional distress or mental anguish that he suffered as a result of the wrongful discharge. *Id.* at 1064. Likewise, the majority opinion in *Sabine Pilot Service, supra,* did not discuss the damages available to the wrongfully discharged employee, but the two concurring justices concluded that the plaintiff in that case could recover lost wages, both past and future, as well as "employee and retirement benefits that would have accrued had employment continued." 687 S.W.2d at 736 (Kilgarlin, J., concurring).

### C. The result in the instant case

In this case the jury found that Cochran discharged Adams for his refusal to violate a municipal regulation that prohibits the operation of a vehicle without a valid inspection sticker. Unlike the plaintiff in *Sorrells*, Adams can point to 18 DCMR § 602.4 (1987) as an officially declared public policy. *Compare Sorrells, supra,* 565

A.2d at 289.[8] Given such a policy, we must decide whether we should recognize and adopt a public policy exception to the general rule that an at-will employee may not sue a former employer in tort for wrongful discharge. Having reviewed the case law from other jurisdictions, we conclude that we should.

We find particularly helpful the opinion of the Supreme Court of Texas in *Sabine Pilot Service, supra.* The plaintiff in that case, a deckhand on a boat owned by Sabine, alleged that he had been fired for refusing to pump the bilges of that boat into coastal waters, an action which would have violated federal law. The trial court granted summary judgment for the employer, but the intermediate appellate court reversed and remanded for trial. The Supreme Court of Texas affirmed that ruling, holding that public policy "require[d] a very narrow exception" to the at-will doctrine established in Texas law for almost a century. The court was careful to point out how narrow the exception was, saying that it would permit a fired at-will employee to sue for wrongful discharge only if the firing was "for the sole reason that the employee refused to perform an illegal act." 687 S.W.2d at 735. In the trial of such a case, moreover, it would be "the plaintiff's burden to prove by a preponderance of the evidence that his discharge was for no reason other than his refusal to perform an illegal act." *Id.* The Texas courts again addressed the scope of the exception in *Winters v. Houston Chronicle*

239, 248, 743 A.2d 380, 385 (1988) (limiting damages to back pay only, but noting that if employer's conduct is sufficiently egregious, employee may bring separate tort action for "outrage"); *Brockmeyer v. Dun & Bradstreet, supra,* 113 Wis.2d at 574, 335 N.W.2d at 841.

The courts in two other states also allow at-will employees to bring wrongful discharge actions in contract. Although loosely based on "public policy," these courts' decisions are also based on covenants that the law implies in all contracts. Massachusetts implies a covenant of good faith and fair dealing in all employment contracts, including at-will employment relationships. *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977). In New Hampshire the courts impose a duty on the employer not to discharge an employee in "bad

faith or malice." *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 131, 316 A.2d 549, 551 (1974).

7. Whether such a claim would state a cause of action in tort under District of Columbia law is, of course, a matter on which we express no opinion.

8. Although *Sorrells* speaks of a "statutorily declared public policy," 565 A.2d at 289 (citing the dissent in *Ivy, supra,* 428 A.2d at 833), we see no reason not to include municipal regulations as well as statutes within the scope of that phrase. Regulations are issued by executive agencies under statutory authorization, and validly promulgated regulations, like statutes, have "the force and effect of law." *Dankman v. District of Columbia Board of Elections and Ethics,* 443 A.2d 507, 513 (D.C.1981) (en banc) (citation omitted).

**34**

*Publishing Co., supra,* in which the state Supreme Court affirmed the intermediate court's refusal, based on *Sabine Pilot Service,* to extend the exception to cover a claim by an employee that he was discharged for reporting illegal activities by other employees to his employer. The court noted that the plaintiff in *Winters* did not come within the exception recognized in *Sabine Pilot Service* because the plaintiff "was not forced to choose between risking criminal liability [and] being discharged from his livelihood." *Winters, supra,* 795 S.W.2d at 724.

We are persuaded that the Texas rule strikes the best balance between the sound and long-established at-will doctrine and the need to recognize and, when necessary, to enforce an identifiable public policy. Accordingly, we adopt the Texas rule and apply it to this case. Appellant Adams was forced to choose between violating the regulation and keeping his job—the very choice which, under *Sabine Pilot Service* and *Winters,* he should not have been required to make. Even though the criminal liability facing him was not very great, it was nonetheless unacceptable and unlawful for his employer to compel him to choose between breaking the law and keeping his job. We therefore hold, following the two Texas cases, that there is a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation. The burden of proving by a preponderance of the evidence that this was the sole reason shall be on the fired employee.

█ We also follow the majority rule and hold that this cause of action sounds in tort, and that the tort is intentional. *See* PROSSER, *supra,* § 130, at 1029. Because the goal of the exception is to further an officially declared public policy, the law should allow for the full range of remedies

to discourage employers from such conduct. *See Sterling Drug, Inc. v. Oxford, supra* note 6, 294 Ark. at 253, 743 S.W.2d at 388 (Purtle, J., dissenting from majority's conclusion that cause of action for wrongful discharge sounds in contract, and that damages are therefore limited to lost wages); *Tameny v. Atlantic Richfield Co., supra* note 5, 27 Cal.3d at 175, 610 P.2d at 1335, 164 Cal.Rptr. at 844 ("an employer's obligation to refrain from discharging an employee who refuses to commit a criminal act does not depend upon any express or implied [contract], but rather reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes"). Those remedies should include compensatory damages not only for lost wages and other financial benefits, such as health insurance and retirement payments, but also for any emotional distress or mental anguish that the employee may suffer as a result of the wrongful discharge. *Smith v. Atlas Off-Shore Boat Service, Inc., supra,* 653 F.2d at 1064.

## III. EMOTIONAL DISTRESS

Adams alleged in his complaint that he suffered "humiliation, mental anguish and emotional distress" and asked for, *inter alia,* damages of $200,000. The complaint, however, did not make clear whether Adams was seeking damages for the separate tort of intentional infliction of emotional distress or was merely including this allegation as part of his claim for damages for wrongful discharge. The trial court, in its order granting Cochran's motion for summary judgment "with respect to damages for emotional distress," similarly did not state whether it was ruling on the emotional distress matter as a separate claim or as an element of damages under the wrongful discharge claim. We must therefore determine whether the evidence would support recovery under either of these two theories.[9]

9. In a memorandum filed in this court after oral argument, Adams states that he "did not allege a cause of action for intentional infliction of emotional distress" but only "sought damages

for emotional distress as a consequence of the tort of wrongful discharge." In a footnote in that memorandum, however, Adams adds that it is "possible to infer that the complaint raised a

■ To recover damages for the tort of intentional infliction of emotional distress, the plaintiff must show "(1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" *Howard University v. Best,* 484 A.2d 958, 985 (D.C.1984) (citations omitted). The evidence in this case, even when viewed in the light most favorable to Adams, shows only that Cochran fired him because he refused to violate the law by driving a truck without an inspection sticker. Cochran offered to pay any fines that Adams incurred, and there is no evidence that the truck posed a safety hazard to Adams or to the public at large. On this record Cochran's conduct cannot be called "extreme and outrageous," nor can it reasonably be said that any emotional distress suffered by Adams was the result of intentional or reckless behavior on the part of Cochran or its agents. Insofar as the complaint may be read as stating a claim of emotional distress as a separate tort, therefore, the trial court was surely correct in granting Cochran summary judgment on such a claim.

■ But that does not end our discussion. Having recognized a .limited public policy exception to the rule that an at-will employee may not sue his or her former employer in tort for wrongful discharge, we have held in part II–C, *supra,* that the damages for such a tort may include compensation for any emotional distress or mental anguish resulting from the discharge. *Smith v. Atlas Off–Shore Boat Service, Inc., supra,* 653 F.2d at 1064. Adams must therefore be given an opportunity to prove whether he suffered such emotional distress, as he alleged in his complaint and reiterated, in compliance with

Super.Ct.Civ.R. 12–I(k), in his opposition to Cochran's motion for summary judgment. The trial court's grant of summary judgment on this aspect of his claim prevented him from introducing any evidence of his emotional distress at trial. That judgment must therefore be reversed and this case remanded for further proceedings on this issue.

## IV.  PUNITIVE DAMAGES

■ We turn finally to the trial court's two orders denying Adams leave to amend his complaint by adding a claim for punitive damages. Although Super.Ct.Civ.R. 15 provides that leave to amend "shall be freely given when justice so requires," we have held that an order denying leave to amend under Rule 15 will not be reversed unless we are convinced that the trial court abused its discretion. *Eagle Wine & Liquor Co. v. Silverberg Electric Co.,* 402 A.2d 31, 34 (D.C.1979) (citing cases). We find no abuse of discretion in this case.

Adams filed his first motion for leave to amend the complaint more than two years after the complaint was filed, and more than one year after discovery had closed and pretrial proceedings had been concluded. The motion was based on deposition testimony taken more than a year earlier. Moreover, the motion, if granted, would have required additional discovery and, in all likelihood, a delay in the trial. In these circumstances we cannot say that the court abused its discretion in denying the first motion. Since the second motion, filed four months later, offered nothing new, there was *a fortiori* no abuse of discretion in its denial. *Gordon v. Raven Systems & Research, Inc.,* 462 A.2d 10, 13–14 (D.C.1983).[10]

claim of intentional infliction of emotional distress." In order to avoid any uncertainty on the point, we will so "infer" and rule accordingly.

10. Because we affirm the denial of both motions for leave to amend the complaint, we do not decide whether punitive damages are available in an action for wrongful discharge under what we now recognize as a public policy exception to the at-will employment doctrine. That is an issue which we leave for another day, for it is not an easy one to resolve. *Compare Smith v.*

*Atlas Off–Shore Boat Service, Inc., supra,* 653 F.2d at 1064 (reversing award of punitive damages as unfair to employer), *with Kessler v. Equity Management, Inc.,* 82 Md.App. 577, 589–593, 572 A.2d 1144, 1151–1152 (1990) (affirming denial of punitive damages, but suggesting that they might be available on a showing of "actual malice").

## V. CONCLUSION

We affirm the trial court's denial of Adams' two motions for leave to amend his complaint by adding a claim for punitive damages. We also affirm the judgment awarding Adams $7094.00 in back pay, since Cochran does not challenge that award and has not filed a cross-appeal. We reverse the trial court's order granting Cochran partial summary judgment on the issue of emotional distress and remand the case for a new trial on that issue or for other proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded for further proceedings.*

NEWMAN, Senior Judge, concurring:

It is long past the time when the public policy exception to the employment at will doctrine should have been recognized by this court. *See Ivy v. Army Times Publishing Co.*, 428 A.2d 831 (D.C.1981) (Ferren, J., joined by Newman, then C.J., and Kelly, J., dissenting from the denial of the Petition for Rehearing En Banc). I applaud the court for finally doing so. However, I regret that the court has chosen to adopt the most narrow possible exception ("the sole cause") following the Supreme Court of Texas in *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985). Respectfully, I note that the terse opinion of the majority in *Sabine* contains no discussion of the possible alternative tests, cites no authority, and relies solely on *ipse dixit.* There is no dearth of authority, either judicial or from commentators, pointing to a more realistic exception. *See, e.g.*, authorities cited in *Smith v. Atlas Off-Shore Boat Service, Inc.*, 653 F.2d 1057 (5th Cir.1981). Like the court in *Smith*, I would require that the employee prove "the employer's decision was motivated in substantial part" by the employee's refusal to break the law. *Smith, supra*, 653 F.2d at 1063. *See also Edwards v. Habib*, 130 U.S.App.D.C. 126, 397 F.2d 687 (1968), *cert. denied*, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969) (retaliatory evictions); *Donohoe & Drury, Inc. v. Crowther*, 108 Daily Wash.L.Rptr. 2405, 2410–11 (D.C.Su-per.Ct. Dec. 24, 1980) (Schwelb, J.) (to prevail in an action for retaliatory eviction, the tenant need not show the landlord's "sole purpose" was to retaliate; rather, the tenant must show that retaliation was a "significant factor" in the landlord's decision to evict).