Patricia UNDERWOOD, Plaintiff,

v.

**ARCHER MANAGEMENT SERVICES, INC., Defendant.**

Civ. A. No. 94–428 (CRR).

United States District Court, District of Columbia.

July 12, 1994.

Wayne R. Cohen of Washington, DC, for plaintiff.

Thomas R. Bagby of Epstein, Becker & Green, Washington, DC, for defendant.

## ORDER

CHARLES R. RICHEY, District Judge.

Before the Court in the above-captioned case are the Defendant's Motion to Dismiss Plaintiff's Claims in Their Entirety, the Plaintiff's Opposition, and the Defendant's Reply thereto. Plaintiff Patricia Underwood, a transsexual, brings this action against her former employer, Defendant Archer Management Services, Inc., challenging the Defendant's termination of her employment. More specifically, the Plaintiff alleges that in discharging her, the Defendant (1) violated Section 1–2512(a)(1) of the District of Columbia Human Rights Act ("DCHRA") by terminating her on the bases of her personal appearance, sex, and/or sexual orientation; (2) violated the public policy of the District of Columbia; and (3) committed the tort of Intentional Infliction of Emotional Distress.

The "Factual Background" section of the Plaintiff's Complaint sets out Ms. Underwood's underlying allegations giving rise to this action. In its entirety, this section reads as follows:

5. On or about September 21, 1993, Plaintiff Underwood was hired as an employee by Defendant Archer. Plaintiff Underwood commenced her employment on or about October 1, 1993.

6. While in the employ of Defendant Archer, Plaintiff Underwood's duties included answering telephones and other receptionist-oriented tasks.

7. Plaintiff Underwood is a transsexual, meaning that she has undergone surgery and other medical treatment to transform her from a man to a woman.

8. At all times during her tenure with Defendant Archer, Plaintiff Underwood executed her duties in a stellar fashion and was an exemplary employee.

9. On or about November 12, 1993, Defendant Archer terminated Plaintiff Underwood under the guise of eliminating her position. In reality, Defendant Archer discharged Plaintiff Underwood because she is a transsexual and retains some masculine traits.

10. Defendant Archer discharged Plaintiff Underwood because of her personal appearance, sex, and/or sexual orientation.

11. Defendant Archer's dismissal of Plaintiff Underwood cannot be explained or justified by a business necessity.

12. As a direct and proximate result of Defendant Archer's conduct, Plaintiff Underwood has suffered lost wages, damage to her reputation, humiliation, severe emotional distress and mental anguish.

Complaint ¶¶ 5–12.

 Archer has moved to dismiss these claims pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. For the purposes of a motion to dismiss for failure to state a claim upon which relief can be granted, all factual allegations contained in the complaint are construed as true, and all doubts and ambiguities are to be decided in the pleader's favor. *Doe v. United States Dept. of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985). However, Fed.R.Civ.P. 8 requires that "a complaint must give the opposing party 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Rochon v. F.B.I.,* 691 F.Supp. 1548, 1564 (D.D.C.1988) (quoting *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)).

Upon careful consideration of all the papers filed in this cases, the oral arguments made by counsel before the Court, the applicable law, and the entire record herein, the Court shall deny the Defendant's Motion to Dismiss the Plaintiff's claim for discrimination on the basis of personal appearance under the DCHRA, but shall grant the Defendant's Motion with respect to all of the Plaintiff's other claims. The Court addresses each of the Plaintiff's three Counts in turn.

*I. THE PLAINTIFF STATES A CLAIM FOR RELIEF IN COUNT I OF HER COMPLAINT BY ALLEGING THAT SHE WAS DISCHARGED ON THE BASIS OF "PERSONAL APPEARANCE" IN VIOLATION OF SECTION 1–2512(A)(1) OF THE DCHRA, BUT SHE FAILS TO STATE A CLAIM IN ALLEGING THAT SHE WAS DISCHARGED ON ACCOUNT OF "SEX" OR "SEXUAL ORIENTATION."*

The DCHRA protects employees who are terminated because of their "race, color, reli-

gion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, physical handicap, matriculation, or political affiliation...." D.C.Code Ann. § 1–2512(a) (1992 & Supp. 1993). The Plaintiff alleges that the Defendant violated this provision, because her discharge was "based upon her personal appearance, sex, and/or sexual orientation." Complaint ¶ 15. More specifically, the Plaintiff argues under the "plain meaning" of this statutory provision, Defendant Archer discriminated against her on the basis of conditions associated with her transsexuality—namely, her gender. However, even after construing the Complaint to be true, the Court must dismiss her claims that she was discharged on the basis of "sex" and "sexual orientation."

■ Because transsexuality is not included in the definition of "sex," Ms. Underwood may not sue on that basis. Unfortunately for the Plaintiff, there are no indications that "sex" is covered by § 1–2512(a). Although the DCHRA does not define "sex," the two most relevant sources support the conclusion that it does not encompass transsexuality. First, the rules issued jointly by the District of Columbia Office of Human Rights and the District of Columbia Commission on Human Rights define the term "sex" to mean "[t]he state of being male or female and conditions associated therewith. It includes the state of being a member of a sub-group of one sex, such as a pregnant female." D.C.Mun.Regs. tit. 4, § 599. The Plaintiff's Complaint gives no indication that any discrimination took place on account of her being a woman or a condition associated therewith. Ms. Underwood fails to allege any discrimination on the basis of her being a woman, in that she merely indicates that she was discriminated against because of her status as a transsexual—that she transformed herself into a woman—but alleges no facts regarding discrimination because she is a woman.

Second, courts have also found Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended, to be persuasive in interpreting the DCHRA. See, e.g., Arthur Young & Co. v. Sutherland, 631 A.2d 354, 361 n. 17 (D.C.1993) ("From time to time in the course of this opinion, therefore, we shall cite as authority federal cases arising under the federal act in interpreting similar provisions of the DCHRA."). In construing Title VII, district courts have ruled the discrimination on the basis of transsexuality is outside of Title VII's protection. See, e.g., Ulane v. Eastern Airlines, Inc., 742 F.2d 1081, 1087 (7th Cir.1984), cert. denied, 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985). Thus, in light of the D.C. regulations, Title VII, and the absence of any legislative intent otherwise, the Court must find that being discharged on the basis of one's transsexuality does not violate the DCHRA, and, accordingly, dismiss the Plaintiff's claim for discrimination on the basis of "sex."

■ The Court must also dismiss the Plaintiff's claim that she was discriminated against on the basis of sexual orientation. The DCHRA defines "sexual orientation" to mean "male or female homosexuality, heterosexuality and bisexuality, by preference or practice." D.C.Code Ann. § 1–2502(28) (1992 & Supp.1993). In a Title VII context, courts have firmly distinguished transsexuality from homosexuality. See Ulane, 742 F.2d at 1083 n. 3. The Complaint is utterly devoid of any reference to the Plaintiff's sexual orientation, much less any discriminatory conduct on behalf of the Defendant discriminating against the Plaintiff's real or perceived preference or practice of sexuality. A conclusory statement that she was discharged on the basis of transsexuality—the medical transformation from being a man to a woman—does not constitute a claim for relief on the basis of being discharged for "sexual orientation."

■ However, the Court must deny the Defendant's contention that the Plaintiff failed to state a claim that she was discharged because of her "personal appearance." According to the Defendant, this allegation is a veiled attempt to invoke DCHRA coverage on the basis of her transsexuality. In asserting this argument, the Defendant mischaracterizes Ms. Underwood's relatively straightforward allegation. As the Plaintiff clearly states in her Complaint, "[i]n reality, Defendant Archer discharged Plaintiff Underwood because she is a transsexual and retains some masculine traits." Complaint

¶ 9. Reading the Complaint liberally, the Court finds that, pursuant to Fed.R.Civ.P. 8, this statement articulates with sufficient specificity the nature of her claim to give Defendant fair notice, and therefore denies the Defendant's Motion to Dismiss with respect to this claim.

## II. AS CONCEDED BY THE PLAINTIFF, HER CLAIM THAT SHE WAS DISCHARGED IN VIOLATION OF THE PUBLIC POLICY OF THE DISTRICT OF COLUMBIA FAILS TO STATE A CLAIM.

In Count II of her Complaint, the Plaintiff alleges that "Defendant Archer's conduct in discharging Plaintiff Underwood because of her personal appearance, sex, and/or sexual orientation violated the public policy of the District of Columbia." Complaint ¶ 18. The parties agree that the public policy exception to the prevailing at-will rule of employment in this jurisdiction is narrow. *See Adams v. George W. Cochran & Co.,* 597 A.2d 28 (D.C. 1991). *Adams* emphasized that this exception lies only when an at-will employee is discharged for refusing to violate a D.C. statute or municipal regulation. *Id.* at 31, 34. Because there is absolutely no indication that the Plaintiff had to choose between breaking the law and keeping her job, and because the Plaintiff has conceded that she failed to state a claim under this Count, the Court shall dismiss this cause of action.

## III. COUNT III FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

■ In its Motion to Dismiss, the Defendant argues that the Plaintiff's claim for intentional infliction of emotional distress should be dismissed because it fails to allege sufficiently extreme and outrageous conduct, and because it is precluded by the District of Columbia Workers' Compensation Act ("DCWCA"). Because the Court finds that Count III of the Complaint should be dismissed for failure to state a claim for relief in that it does not allege sufficient extreme and outrageous conduct, the Court does not reach the issue of preclusion by the DCWCA.

■ To prevail on a claim under this cause of action, a plaintiff must prove "(1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.1982) (citation omitted), *cert. denied,* 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982); *see also, e.g., Hoffman v. Hill & Knowlton, Inc.,* 777 F.Supp. 1003, 1005 (D.D.C.1991). The Restatement of Torts establishes the severity of the conduct necessary to give rise to intentional infliction of emotional distress:

Liability has been found only where the conduct has been so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, comment d; *see also Sere,* 443 A.2d at 37 (requiring conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community").

■ Nothing pleaded in the Complaint approaches this standard of outrageous behavior. At worst, the Complaint alleges discharge, which is insufficient by itself to support a claim for intentional infliction of emotional distress. *See, e.g., Keller v. Assn. of Am. Medical Colleges,* 644 F.Supp. 459, 465 (D.D.C.1985) (stating that termination is "unpleasant" but is not "outrageous in the extreme or especially calculated to cause serious mental distress"), *aff'd,* 802 F.2d 1483 (D.C.Cir.1986). Therefore, because Ms. Underwood does not allege any outrageous or extreme behavior, the Court must dismiss her claim for intentional infliction of emotional distress.

Accordingly, it is, by the Court, this 11th day of July, 1994,

ORDERED that the Defendant's Motion to Dismiss shall be, and hereby is, DENIED with respect to the Plaintiff's claim under the DCHRA for discrimination on the basis of personal appearance, and GRANTED for all of the Plaintiff's other claims; and it is

FURTHER ORDERED that the Plaintiff's allegations in Count I of her Complaint, alleging discrimination on the basis of sex or sexual orientation under the DCHRA, are hereby DISMISSED; and it is

FURTHER ORDERED that because Plaintiff's allegations that she was discharged in violation of the public policy of the District of Columbia fail to state a claim under applicable law, as conceded by the Plaintiff, Count II of the Complaint shall be, and hereby is, DISMISSED; and it is

FURTHER ORDERED that because Count III of the Complaint fails to state a claim for relief for the tort of Intentional Infliction of Emotional Distress, Count III of the Complaint shall be, and hereby is, DISMISSED.