**Carlie J. DARROW, Appellant,**

v.

**DILLINGHAM & MURPHY, LLP, Appellee.**

No. 03–CV–1266.

District of Columbia Court of Appeals.

Argued Feb. 15, 2005.
Decided July 6, 2006.

## I.

In her complaint, Ms. Darrow, who was hired as the Office Administrator for the Washington, D.C. office of D&M, a San Francisco based law firm, charged D&M with retaliatory constructive discharge for actions taken against her after she reported her belief to firm officials that the managing partner of the D.C. office was fraudulently billing firm clients. She also charged D&M with intentional infliction of emotional distress for their response to her revelation. Specifically, she alleges that after she exposed the alleged fraudulent scheme, she was summarily stripped of her duties as office administrator, a move she claims is tantamount to constructive termination, and that her termination under the circumstances caused her severe emotional distress.

## II.

The question of whether a complaint states a claim upon which relief may be granted is one of law, and therefore, our review of the trial court's decision is *de novo*. *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873, 877 (D.C. 1998). "In deciding a motion to dismiss, the court accepts as true all allegations in the Complaint and views them in a light most favorable to the non-moving party." *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.,* 870 A.2d 58, 62 (D.C.2005) (citing *Owens v. Tiber Island Condo. Ass'n,* 373 A.2d 890 (D.C.1977)). Dismissal under Rule 12(b)(6) is appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 41–45, 78 S.Ct. 99, 2

John W. Karr, Washington, for the appellant.

Barbara Van Gelder, Washington, for appellee.

Before WASHINGTON, Chief Judge,* and KERN and SCHWELB, Senior Judges.**

WASHINGTON, Chief Judge:

Appellant Carlie J. Darrow brought suit against the law firm of Dillingham & Murphy, LLP ("D&M") for retaliatory constructive termination and intentional infliction of emotional distress. Appellant contends that the trial court erred when it dismissed her complaint against appellee ("D&M") for failure to state a claim pursuant to Super. Ct. Civ. R. 12(b)(6). We affirm in part and reverse in part.

---

* Chief Judge Washington was an Associate Judge of the court at the time this case was argued. His status changed to Chief Judge on August 6, 2005.

** Judge Schwelb was an Associate Judge of the court at the time this case was argued. His status changed to Senior Judge on June 24, 2006.

L.Ed.2d 80 (1957)); *see also Abdullah v. Roach,* 668 A.2d 801 (D.C.1995); *Wallace, supra,* 715 A.2d at 877.

It has long been the case in the District of Columbia that "an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams v. George W. Cochran & Co.,* 597 A.2d 28, 30 (D.C.1991). There are, however, exceptions to this broad ability to terminate without cause. One such exception precludes an employer from terminating an employee for the employee's refusal to violate a statute. *Id.* at 32. Of course, one must first be discharged from his or her employment before being able to take advantage of this legal protection from at-will termination. Actual termination, however, is not the only form of discharge; a constructive discharge will suffice to bring a tort action for wrongful termination. *Cf. Arthur Young & Co. v. Sutherland,* 631 A.2d 354 (D.C.1993) (affirming a jury verdict finding in favor of an employee's tort claim that her constructive discharge constituted wrongful termination); *accord Balmer v. Steel,* 604 N.W.2d 639, 641 (Iowa 2000) (In order to address "employer-attempted 'end runs' around wrongful discharge and other claims requiring employer-initiated terminations of employment ... a constructive discharge is legally regarded as a firing rather than a resignation.") (quoting *Turner v. Anheuser–Busch, Inc.,* 7 Cal.4th 1238, 32 Cal.Rptr.2d 223, 876 P.2d 1022, 1025 (1994)).

"A constructive discharge occurs when the employer deliberately makes working conditions intolerable and drives the employee into an involuntary quit." *Arthur Young & Co., supra,* 631 A.2d at 362 (citations and quotations marks omitted). The intolerability of the working conditions is judged by an objective standard, not the employee's subjective feelings. *See id.* (establishing a reasonable person standard for identifying a constructive discharge). "Whether working conditions are so intolerable that a reasonable person is forced to resign ... is a question for the trier of fact." *Id.*

Reading the complaint in the light most favorable to appellant, we cannot say beyond doubt that she can prove no set of facts in support of her claim that would entitle her to relief under the law. Specifically, appellant stated that D&M summarily stripped her of all her duties as office administrator, and advertised and hired an individual to replace her in that position. This, she claims, created a work environment that would drive a reasonable person into an involuntary quit. Furthermore, appellant alleges that her constructive discharge was in retaliation for her refusal to participate in illegal billing activity. Accepting these allegations as true,[1] and viewing the Complaint in the light most favorable to her, appellant has adequately alleged a claim of retaliatory constructive discharge that falls within an exception to the at-will employment doctrine. Thus, the trial court erred in dismissing appellant's complaint under Super. Ct. Civ. R. 12(b)(6) for failure to state a claim.[2]

---

1. Factual questions—such as whether appellant was summarily stripped of all her duties as office administrator, whether such action would force a reasonable person into an involuntary quit, and whether D&M engaged in illegal billing practices—are reserved for the trier of fact and are not properly decided in a Rule 12(b)(6) motion.

2. The trial court's order granting the Rule 12(b)(6) motion to dismiss appears to be based on a faulty reading of the complaint. According to the order, the trial court read the complaint as alleging that appellant suffered only minor changes in her job duties after she questioned the billing practices of the managing partner and accused him of

 

## III.

■ To recover damages for the tort of intentional infliction of emotional distress, the plaintiff must show "(1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" *Howard Univ. v. Best,* 484 A.2d 958, 985 (D.C.1984) (citations omitted). Even assuming appellant's claims—that D&M, *inter alia,* removed her billing duties, prevented her access to the firm's billing software, and advertised for a new office manager—are true, D&M's conduct cannot be said, as a matter of law, to be "extreme and outrageous," or "intentionally or recklessly" causing appellant severe emotional distress. The conduct described in the complaint was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Jackson v. District of Columbia,* 412 A.2d 948, 957 (D.C. 1980). Appellant has failed to make sufficient allegations to support a claim of intentional infliction of emotional distress in an employment context. *See, e.g., Crowley v. North Am. Telecommunications Ass'n,* 691 A.2d 1169, 1172 (D.C.1997) (quoting *Elliott v. Healthcare Corp.,* 629 A.2d 6, 9 (D.C.1993), as saying that "[m]ere discharge of an employee is not conduct that goes beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community" (alteration in original; quotation marks omitted)).

Accordingly, the judgment of the trial court is

*Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.*

---

fraud. Appellant's complaint, however, alleges that she was stripped of *all* of her duties as office manager after questioning the billing practices. Thus the trial court's rationale that minor changes in job duties cannot, as a matter of law, create such intolerable conditions as to drive an employee into an involuntary quit, is not supported by a fair reading of the complaint.