McLeese, Associate Judge, concurring in part and dissenting in part:
The opinion for the court affirms the trial court's dismissal of Ms. Bereston's complaint. I agree as to Ms. Bereston's wrongful-termination claim, for the reason stated in Part III.A.2, which I join: the complaint fails to adequately allege that Ms. Bereston was being directed to violate HIPAA in connection with patient-registration procedures. The court need not address whether the complaint was deficient in the other respects identified in Part III.A.3, and I therefore do not join that part of the court's opinion. Although I see no reason to belabor the point, I do not agree with the conclusions reached in Part III.A.3. In my view, the complaint sufficiently alleges that Ms. Bereston's employment was terminated because Ms. Bereston refused to do what she was being directed to do with respect to patient-registration procedures.
I respectfully dissent as to Ms. Bereston's claim of what might be called wrongful discipline in violation of public policy. As the opinion for the court notes, ante at 110, this court has not yet decided whether to recognize such a claim. Other courts have divided on the question, ante at 110 n.40, and the Restatement of Employment Law "expresses no view" on the question. § 5.01 cmt. c (Am. Law Inst. 2015). I agree with the courts that have concluded that the relevant considerations on balance favor recognizing such claims. We initially recognized a claim for wrongful termination because it would be "patently contrary to the public welfare" to permit an employer "to require [its] employees to break the law as a condition of continued employment." Adams v. George W. Cochran & Co. , 597 A.2d 28, 32 (D.C. 1991) (internal quotation marks omitted). Although we described the doctrine of wrongful termination as "very narrow," id. at 34, we have since expanded the doctrine in a variety of ways. See Rosella v. Long Rap, Inc. , 121 A.3d 775, 778 (D.C. 2015) (recognizing that doctrine was subsequently extended to cover termination in violation of clear public policy); Darrow v. Dillingham & Murphy, LLP , 902 A.2d 135, 138 (D.C. 2006) (applying doctrine in case of constructive rather than actual termination). See generally Carl v. Children's Hosp. , 702 A.2d 159, 160 (D.C. 1997) (en banc) (per curiam) ("There is nothing in the Adams opinion that bars this court-either a three-judge panel or the court en banc-from recognizing some other public policy exception when circumstances warrant ....").
In my view, it would also be patently contrary to the public welfare to permit employers to impose harsh adverse employment consequences short of termination on employees to coerce employees to violate the law or to punish employees for refusing to break the law. I acknowledge the court's concern about injecting the courts unduly into the employment relationship. Ante at 110-11. As the court notes, ante at 111, other statutes-such as the Human Rights Act, the Whistleblower Protection Act, and the Workers' Compensation Act-provide employees with causes of action based on retaliation short of termination. Judicial enforcement of those provisions has not proven infeasible, and I see no reason why claims of wrongful discipline would be any more difficult to resolve.
*118 I also note that the Supreme Court has held that several federal statutes contain an implied right to be free from retaliation. See, e.g. , CBOCS W., Inc. v. Humphries , 553 U.S. 442, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008) ( 42 U.S.C. § 1981 ); Jackson v. Birmingham Bd. of Educ. , 544 U.S. 167, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005) ( 20 U.S.C. § 1681 et seq. (Title IX) ). Those holdings demonstrate that inferring a right to be free from retaliation and determining the scope of that right do not exceed the proper judicial function.
I agree with the court that a claim of wrongful discipline in violation of public policy would require the employee to show "employer action that would have been materially adverse to a reasonable employee." Ante at 112 (brackets and internal quotation marks omitted). I do not agree, however, that Ms. Bereston's complaint was properly subject to dismissal under that standard. Ante at 113-15. The complaint alleges that staff called Ms. Bereston names, made remarks about her race, and screamed in her face; supervisory personnel failed to discourage that conduct and refused to let Ms. Bereston respond; a supervisor suggested that Ms. Bereston's job security would be endangered if she insisted on compliance with the law; supervisory personnel made unwarranted accusations that Ms. Bereston was not a good leader or team player; Ms. Bereston was ridiculed and admonished for minor errors even though other employees were not treated similarly; and Ms. Bereston was unjustifiably placed on a Performance Improvement Plan (PIP). I do not view those allegations as conclusory, and if they are proven it seems to me that a reasonable factfinder could conclude that Ms. Bereston was subjected to "materially adverse" employer action. See, e.g. , Crowley v. Vilsack , 236 F.Supp.3d 326, 330-31 (D.D.C. 2017) ("courts in this jurisdiction consistently have held that the imposition of a PIP-even one that does not result in a negative impact on salary, grade or performance appraisal-can constitute an adverse action") (citing cases).
In sum, I would vacate the dismissal of Ms. Bereston's wrongful-discipline claim and remand for further proceedings. I therefore respectfully dissent in part.