Nancy NOLTING, Appellant,

v.

NATIONAL CAPITAL GROUP,
INC., Appellee.

No. 91–CV–612.

District of Columbia Court of Appeals.

Argued Feb. 6, 1992.
Decided March 12, 1993.

Robert B. Fitzpatrick, Washington, DC,
for appellant.

Robert L. Bodansky, Washington, DC,
for appellee.

Before STEADMAN and KING,
Associate Judges, and GALLAGHER,
Senior Judge.

STEADMAN, Associate Judge:

The District of Columbia Workers' Compensation Act (the "Act") prohibits any employer from discriminating against an employee because that employee has claimed compensation under the Act, and provides an administrative remedy for any such discrimination. D.C.Code § 36–342 (1988). The issue before us is whether an employee who claims she has been discharged in retaliation for making such a claim may eschew the administrative remedy and instead obtain recovery against the employer on a tort theory of wrongful discharge under the narrow "public policy" exception to the employment-at-will doctrine recognized by this court in *Adams v. George W. Cochran & Co.*, 597 A.2d 28 (D.C.1991). We hold that she may not and accordingly uphold the trial court's dismissal of the complaint.

## I.

Appellant Nancy Nolting was employed as a financial analyst from August 1987, to June 1989, with National Capital Group, Inc. ("National"). In the course of her employment she suffered work-related injuries and filed a claim for workers' compensation. On June 2, 1989, she was discharged from her position, allegedly in retaliation for her filing the claim.

Instead of pursuing the administrative remedy for retaliatory action provided in the Act,[1] Nolting filed a complaint in the Superior Court on a tort theory of wrongful discharge in violation of public policy. She sought front and back pay, the value of her lost employee benefits, and compen-

1. Soon after she was fired, and prior to bringing the action in Superior Court for wrongful discharge, Nolting did seek unemployment insurance benefits from the Office of Unemployment Compensation of the District of Columbia Department of Employment Services ("DOES"). She was granted benefits in a determination made on September 26, 1989. National appealed and a hearing followed. The DOES reversed the original determination, finding that Nolting was discharged for employment-related misconduct, and therefore, denied her any benefits. *See* 7 DCMR § 312 (1986). Nolting did not appeal the decision of the DOES, nor did she raise the issue of retaliatory discharge at any point in the unemployment insurance proceedings.

satory, consequential, and punitive damages. National filed a motion to dismiss and/or for summary judgment, which was granted by the trial court.[2] A timely appeal was filed.

## II.

In 1982, the current Workers' Compensation Act (the "Act"), enacted by the Council of the District of Columbia, became effective. *See* D.C.Code §§ 36–301 to –345 (1988). As part of the Act, it was made unlawful for an employer

> to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer, or because he has testified or is about to testify in a proceeding under this chapter.

D.C.Code § 36–342.[3]

This section also contains a specific remedy for any such unlawful retaliatory action.

The prescribed remedy subjects an employer who violates this section to "a penalty of not less than $100 or more than $1,000," and further provides that the employee "so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination." D.C.Code § 36–342. The Act does not refer to any other remedies.[4]

At the time the Act was promulgated, it had been settled for many years that in the District of Columbia an employment contract, absent evidence to the contrary, was terminable at the will of either party[5] and that an employer could discharge an at-will employee at any time and for any reason, or for no reason at all.[6] Thus, this statute was enacted against the clear backdrop of an unconditional employment-at-will doctrine. This being the case, we see no basis for any argument that in enacting the provision barring retaliatory discharge, the

---

**2.** Given our decision, we need not address appellee's other arguments for dismissal: (1) *res judicata* and collateral estoppel based on the outcome of the unemployment insurance proceeding (the argument addressed in Judge Gallagher's concurring opinion); and (2) expiration of the applicable statute of limitations, asserted to be the one-year time period for a workers' compensation claim set forth in D.C.Code § 36–314 (1988). Appellant argues, *inter alia*, that even if she is bound by the determination in the unemployment insurance proceeding that her firing was at least in part due to misconduct, this does not preclude her from recovery. She cites our holding that relief is available under § 36–342 if retaliation for a workers' compensation claim is only one of several motives and bases for a discharge. *See Abramson Assocs., Inc. v. District of Columbia Dep't of Employment Services*, 596 A.2d 549, 554 (D.C.1991) (claimant must show dismissal was "wholly or in part" in retaliation for seeking workers' compensation benefits). Appellant thus purports to distinguish the requirement of *Adams* that the *sole* ground for discharge be the public policy violation.

**3.** Prior to 1982, workers' compensation claims in the District of Columbia were governed by the federal Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), now contained in 33 U.S.C. §§ 901–950 (1988), and administered by the United States Department of Labor. *See Crum v. Gen. Adjustment Bureau*, 238 U.S.App.D.C. 80, 738 F.2d 474 (1984). Section 49 of the LHWCA, 33 U.S.C. § 948a, added in 1972, is comparable to D.C.Code § 36–342.

We are not cited to, nor do we find, any holding that relief for retaliatory discharge of a person covered by the LHWCA is available apart from the relief provided in the LHWCA. We have frequently noted in cases interpreting the Act the general rule that when a local provision is borrowed directly from a federal statute, the legislature is presumed to have borrowed the judicial construction as well. *See, e.g., Meiggs v. Associated Builders, Inc.*, 545 A.2d 631, 635 (D.C. 1988), *cert. denied*, 490 U.S. 1116, 109 S.Ct. 3178, 104 L.Ed.2d 1040 (1989).

**4.** The key differences between the tort remedy sought by appellant and the administrative remedy provided by § 36–342 appear to be the possibility of compensatory damages other than lost wages (e.g., emotional distress) and the possibility of punitive damages. *See Adams, supra,* 597 A.2d at 34.

**5.** There is no claim in this case that Nolting's employment was not at-will.

**6.** In our recent *Adams* case, *supra,* 597 A.2d at 30–31, we reviewed the status of the employment-at-will doctrine in the District of Columbia and cited our many prior holdings, beginning with *Pfeffer v. Ernst*, 82 A.2d 763 (D.C.1951) (citing cases), and *Taylor v. Greenway Restaurant, Inc.*, 173 A.2d 211 (D.C.1961), and including *Ivy v. Army Times Pub. Co.*, 428 A.2d 831 (D.C.1981), and *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285 (D.C. 1989).

Council contemplated that any relief would be available for its violation apart from that expressly provided for. *See Smith v. Police & Firemen's Retirement & Relief Bd.*, 460 A.2d 997, 1000 (D.C.1983) ("[w]hen a statute provides a comprehensive enforcement scheme for violations of its substantive provisions, a legislative intent to provide an exclusive remedy may be inferred"); 1 HENRY H. PERRITT, JR., EMPLOYEE DISMISSAL LAW AND PRACTICE § 2.38, at 170 (3d ed. 1992) ("[c]ourts usually are reluctant to recognize an implied private right of action when the statute establishes comprehensive administrative remedies available to dismissed employees" (citing cases)); *see also Garrett v. Washington Air Compressor Co.*, 466 A.2d 462, 463 (D.C.1983) (no right to institute court action against employer for alleged failure to make timely workers' compensation payments where Act provides specific remedy for alleged wrong).[7]

### III.

However, appellant argues that regardless of the status of the law at the time the provision was enacted, subsequent case law has opened the possibility of a tort remedy. She invokes the narrow exception to the employment-at-will doctrine that we recognized in 1991. In *Adams, supra,* this court held that

> there is a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation.

597 A.2d at 34. Appellant argues that § 36–342 sets forth a clear public policy, the violation of which should give rise to a tort remedy based on a "public policy exception" to the employment-at-will doctrine as readily as a discharge for refusing to violate a law.

We do not think this argument is tenable. First of all, as discussed above, we are dealing here with a statutory provision which not only creates the wrong but also contains a specific remedy to compensate the person suffering that wrong. No such statute was involved in *Adams;* there was no administrative or other remedy available to the plaintiff. The injury to the plaintiff in *Adams* would have gone uncompensated if the court had refused to recognize a public policy tort. In the case *sub judice,* appellant does not stand in that same position; she is not facing a situation in which the only possibility for compensation for her claimed injury is the recognition by this court of a public policy tort expansive enough to cover her situation. *See, e.g., Mello v. Shop & Stop Cos.,* 402 Mass. 555, 524 N.E.2d 105, 106 & n. 2 (1988) (public policy liability may exist "unless no common law rule is needed because the legislature has also prescribed a statutory remedy," citing as one example its worker's compensation retaliation provision); PERRITT, *supra,* § 5.25, at 483 ("[c]ourts are reluctant to permit public policy tort recovery for violation of labor statutes containing their own administrative remedies"), § 5.28, at 494–95.

Furthermore, we have subsequently emphasized the narrowness of the *Adams* exception. In *Gray v. Citizens Bank of Washington,* 602 A.2d 1096 (D.C.), *opn. reinstated on denial of reh'g,* 609 A.2d 1143 (D.C.1992), the court held that *Adams, supra* (creating exception for an employee who was discharged in retaliation for refusing to break a statutorily declared law or regulation), and the prior case of *Sorrells, supra* note 6, 565 A.2d at 289 (refusing to carve out exception where no statutorily-declared public policy was involved), together "demonstrate the extent of *and* limitation upon" the public policy exception to the at-will doctrine in the District of Columbia. *Gray, supra,* 602 A.2d

7. Jurisdictions vary considerably on the nature of remedies, depending on particular statutory wording and case law, for retaliatory dismissals of employees. See generally PERRITT, *supra,* §§ 2.38, 5.25, 5.28; 2A ARTHUR LARSON, THE LAW OF

WORKMEN'S COMPENSATION § 68.36 (1992). In declining to follow cases cited by appellant, we take especial note of our guiding jurisprudence on both the at-will doctrine and the narrow public policy exception.

at 1097 (emphasis in original). However that "very narrow" exception may apply in other circumstances, we do not think it can be invoked where the very statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation.

*Affirmed.*

GALLAGHER, Senior Judge, concurring:

I would have disposed of this appeal on *res judicata* grounds if only because of public interest considerations. The doctrine of *res judicata* establishes that once a claim is finally adjudicated "the doctrine of claim preclusion will operate to prevent the same parties from ' "relitigation of not only those matters actually litigated but also those which might have been litigated in the first proceeding." ' " *Stutsman v. Kaiser Found. Health Plan,* 546 A.2d 367, 369–70 (D.C.1988) (quoting *Jonathan Woodner Co. v. Adams,* 534 A.2d 292, 295 n. 6 (D.C.1987) (quoting *Goldkind v. Snider Bros., Inc.,* 467 A.2d 468, 473 n. 10 (D.C. 1983))). In *Stutsman,* we stated, "It is the factual nucleus, not the theory upon which a plaintiff relies, which operates to constitute the cause of action for claim preclusion purposes." *Id.* at 370.

Those considerations, which apply here, led me to conclude that this proceeding should be decided against appellant on *res judicata* grounds. I believe it is not in the public interest to permit such relitigation here.

Since, however, the court has determined to decide this case on the merits, I agree with the court's reasoned opinion and join in it.