# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 11, 2007          Decided January 22, 2008

No. 06-7161

FADY KASSEM,
APPELLANT

v.

WASHINGTON HOSPITAL CENTER,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 05cv02352)

———

*Brian W. Shaughnessy* argued the cause and filed the briefs for appellant.

*Keith J. Harrison* argued the cause for appellee. With him on the brief was *Daniel M. Creekman*.

Before: ROGERS, GARLAND, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Appellant Fady Kassem brought this diversity action charging his former employer, Washington

Hospital Center, with wrongful discharge and intentional infliction of emotional distress. The district court dismissed each claim, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. We affirm in part and reverse in part.

I

Because the district court dismissed Kassem's complaint pursuant to Rule 12(b)(6), the following description of the facts treats the complaint's allegations as true and draws all reasonable inferences in Kassem's favor. *See, e.g.*, *Gilvin v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001).

Prior to his discharge in 2003, Kassem worked as a nuclear medical technologist at Washington Hospital Center (WHC). WHC had sponsored Kassem, an Australian national, for a work visa. According to the complaint, Kassem observed and reported numerous violations of Nuclear Regulatory Commission (NRC) regulations during his tenure at WHC. The hospital's administration, however, ignored his reports and discouraged him from bringing violations to its attention. Compl. ¶¶ 14-20.

On July 20, 2003, a serious violation of NRC regulations occurred at the hospital. Lawrence Dioh, a WHC nuclear technician, was injected with radioactive dye by another hospital employee without the knowledge and approval of a physician. Thereafter, WHC launched a sham investigation intended to establish that it was Kassem who injected the dye, as retribution for his previous reporting of regulatory violations. The hospital fabricated evidence and pressured Kassem to corroborate it. Compl. ¶¶ 23-24. One member of the hospital's investigative team told him that, if he said "'what they wanted to hear to make the investigation complete, then he would be able to save his

visa and his livelihood and wouldn't be kicked out of the country.'" *Id.* ¶ 24.

Kassem, however, refused to cooperate with the investigation. "Recognizing that he himself as well as the Washington Hospital Center had a duty to inform the NRC accurately of the violations, [Kassem] declined to participate in [WHC's] cover-up of its regulatory infractions." *Id.* The "consequence[] of his refusal [was] the termination of his employment," *id.*, which took place on August 15, 2003, *id.* ¶ 26. Ten days later, on August 25, WHC "made false statements about [Kassem] to the NRC with the intent of inducing the NRC to initiate disciplinary action against" him. *Id.* ¶ 48. In early January 2005, the NRC completed its own investigation and hearing. The Commission dismissed the charges against Kassem for insufficient evidence and initiated proceedings against WHC. *Id.* ¶ 27.

In December 2005, Kassem sued WHC in the United States District Court for the District of Columbia, invoking the court's diversity jurisdiction. Kassem asserted two claims under District of Columbia law: wrongful discharge and intentional infliction of emotional distress (IIED).[1] WHC responded with a motion under Rule 12(b)(6), asking the district court to dismiss Kassem's complaint for failure to state a claim upon which relief can be granted.

The district court granted WHC's motion as to both claims. The court dismissed the wrongful discharge claim on the basis of the District of Columbia's employment-at-will doctrine. Although the court acknowledged that the District recognizes a

---

[1]Kassem's original complaint also identified a breach of contract claim, but his opposition to the motion to dismiss recast the claim as one for wrongful discharge, and the district court treated it as such.

public policy exception to that doctrine, it found the exception unavailable because the statute that created the public policy upon which Kassem relied provided its own "'specific and significant remedy.'" *Kassem v. Wash. Hosp. Ctr.*, No. 05-2352, 2006 WL 2474098, at \*2 (D.D.C. Aug. 25, 2006) (quoting *Nolting v. Nat'l Capital Group, Inc.*, 621 A.2d 1387, 1390 (D.C. 1993)). The court dismissed Kassem's IIED claim on the ground that his allegations were based on "purely occupational concerns with purely occupational consequences," which the court found did not satisfy the elements of the tort of IIED under D.C. law. *Id.* at \*4.

## II

We review de novo a district court's dismissal of a complaint under Rule 12(b)(6). *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). In so doing, we "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). Applying this standard, we affirm the dismissal of Kassem's wrongful discharge claim, but reverse the dismissal of his IIED claim.

## A

"It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991) (citing, inter alia, *Pfeffer v. Ernst*, 82 A.2d 763, 764 (D.C. 1951)).[2] In *Adams*, however, the District of Columbia Court of Appeals recognized

---

[2]Kassem does not dispute that he was an at-will employee of WHC. *See* Appellant's Br. 8-9.

a "very narrow" public policy exception to the at-will employment doctrine: "a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." *Id.* at 34. Kassem contends that his suit falls within the *Adams* public policy exception because WHC terminated him in retaliation for his refusal to participate in a sham investigation that violated NRC regulations. *See* Pl.'s Opp'n to Mot. to Dismiss at 5-6; Compl. ¶ 35. Those regulations make it unlawful for licensees and employees of licensees, among others, to "[d]eliberately submit to the NRC [or] a licensee . . . information that the person submitting the information knows to be incomplete or inaccurate in some respect material to the NRC." 10 C.F.R. § 30.10(a)(2).

The public policy exception was itself limited in *Nolting v. National Capital Group, Inc.*, in which the D.C. Court of Appeals held the exception unavailable "where the very statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation." 621 A.2d at 1390. As the district court correctly held, *Nolting* controls this case. The NRC regulations upon which Kassem relies for his public policy protection were promulgated pursuant to the Energy Reorganization Act (ERA), 42 U.S.C. § 5801 *et seq*. *See* Deliberate Conduct by Unlicensed Persons, 63 Fed. Reg. 1890, 1896 (Jan. 13, 1998). And that Act contains its own remedy for retaliation against nuclear-safety whistleblowers.

Section 5851 of the ERA provides that an employer may not "discharge . . . or otherwise discriminate against any employee" because the employee "notified his employer of an alleged violation of this chapter" or "refused to engage in any practice made unlawful by this chapter . . . , if the employee has identified the alleged illegality to the employer." 42 U.S.C. §

5851(a)(1). "Any employee who believes that he has been discharged or otherwise discriminated against" in violation of § 5851(a) may file a complaint with the Secretary of Labor within 180 days after the violation. *Id.* § 5851(b)(1). The filing of a complaint triggers an administrative process in which the Secretary must conduct an investigation and issue an order either providing relief or denying the complaint. *See id.* § 5851(b)(2)(A). If the Secretary determines that a violation has occurred, "the Secretary shall order the person who committed such violation to (i) take affirmative action to abate the violation, and (ii) reinstate the complainant to his former position together with the compensation (including back pay) [and] privileges of his employment." *Id.* § 5851(b)(2)(B). The Secretary may also order the payment of compensatory damages, costs, and expenses, including attorneys' fees. *See id.*

Like the D.C. statute at issue in *Nolting*, ERA § 5851 provides a "specific and significant remedy for the party aggrieved by its violation." *Nolting*, 621 A.2d at 1390. Although Kassem insists that "he was not required" to pursue the § 5851 remedy, Appellant's Br. 13, *Nolting* holds that a plaintiff cannot "eschew the administrative remedy and instead obtain recovery against the employer on a tort theory of wrongful discharge under the narrow 'public policy' exception to the employment-at-will doctrine." *Nolting*, 621 A.2d at 1387.[3]

---

[3]For the first time on appeal, Kassem contends that the ERA's remedy was effectively unavailable to him because his discharge led to financial distress and withdrawal of his visa, which in turn caused him to depart for Australia. Kassem never raised this argument in the district court, and it is therefore waived. *See, e.g.*, *United States v. Gartmon*, 146 F.3d 1015, 1029 (D.C. Cir. 1998); *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984).

Finally, Kassem asserts that the remedy provided by § 5851 cannot displace his wrongful discharge claim because it contains a "nonpreemption" provision.  That provision states that § 5851 "may not be construed to expand, diminish, or otherwise affect any right otherwise available to an employee under Federal or State law to redress the employee's discharge. . . ."  42 U.S.C. § 5851(h).  But the deficiency in Kassem's wrongful discharge claim is not that § 5851 preempts it, but that the District's *own* common law extinguishes it when the statute giving rise to the public policy at issue contains an alternative remedy -- as § 5851 does here.  The district court was therefore correct in dismissing Kassem's wrongful discharge claim.

B

"To establish a *prima facie* case of intentional infliction of emotional distress [under D.C. law], a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress."  *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002).  Characterizing Kassem's allegations as "all revolv[ing] around purely occupational concerns with purely occupational consequences," *Kassem*, 2006 WL 2474098, at *4, the district court ruled that a claim of IIED was unavailable.  It is correct that "generally, employer-employee conflicts do not rise to the level of outrageous conduct" required to satisfy the first element of an IIED claim. *Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 211-12 (D.C. 1997).  If the conduct at issue is otherwise outrageous, however, a plaintiff's "status as an employee does not materially affect the sufficiency of her complaint."  *Larijani*, 791 A.2d at 45 n.3; *see King v. Kidd*, 640 A.2d 656, 677-78 (D.C. 1993) (stating that a supervisor's participation in retaliating against an employee who had complained of sexual harassment supported an IIED claim because such conduct "cannot be considered

merely as an instance of typical 'employer-employee conflicts'"); *Howard Univ. v. Best*, 484 A.2d 958, 986 (D.C. 1984) (upholding an IIED claim based on a supervisor's sexual harassment of an employee, while rejecting an IIED claim based on the supervisor's interference with the employee's professional responsibilities).

In *Carter v. Hahn*, the D.C. Court of Appeals held that reporting false information to the police can constitute outrageous conduct for the purpose of stating an IIED claim. *See* 821 A.2d 890, 895 (D.C. 2003). In that case, the defendant store owner intentionally gave the police false information about the plaintiff, claiming that she was the person who had cashed a stopped check at the defendant's store. No District of Columbia case has suggested that *Carter* does not apply in the employment context. Moreover, many state courts, and federal courts applying state law, have held that the intentional filing of a false report about an employee with government authorities can be sufficiently outrageous to state an IIED claim.[4] Indeed, in a case similar to Kassem's, the Ohio Supreme Court held that an employee properly alleged a cause of action for IIED where

---

[4]*See, e.g.*, *Gionfriddo v. Town of Cromwell*, 2007 WL 1346919, at \*4 (D. Conn. May 7, 2007) (holding that the plaintiff stated an IIED claim where his employer knowingly made false statements to police, implicating him in thefts, in retaliation for his complaints regarding lax security); *Caesar v. Hartford Hosp.*, 46 F. Supp. 2d 174, 180 (D. Conn. 1999) (holding that a plaintiff stated an IIED claim where her employer falsely reported misconduct to the state Department of Public Health "to retaliate against her and jeopardize her profession"); *Taiwo v. Vu*, 822 P.2d 1024, 1029-30 (Kan. 1991) (affirming a verdict for IIED where an employer intentionally made a false report to the police concerning an employee who had just resigned); *Engrum v. Boise S. Co.*, 527 So. 2d 362, 365 (La. Ct. App. 1988) (holding that an employee stated an IIED claim where he alleged that his employer falsely reported to the sheriff that he had forged a paycheck).

his employer had made him the target of a federal investigation in order to cover up the employer's own misconduct. *See Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1082-83 (Ohio 1991). In so holding, the court rejected the contention that the verdict in the employee's favor should be overturned because the actions of which he complained arose in the context of at-will employment. *Id.*; *cf. Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 867-68 (Ill. App. Ct. 2000) (acknowledging that "courts often hesitate to find a claim for [IIED] in employment situations," but finding such a claim properly stated where the employer, in retaliation for the employee reporting nuclear safety violations to the NRC, targeted the employee in a sham investigation in which it intentionally spread false allegations of his misconduct).

In granting WHC's motion to dismiss Kassem's IIED claim, the district court relied upon the D.C. Court of Appeals' decision in *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624 (D.C. 1997). In *Kerrigan*, the plaintiff alleged that his employer "targeted him for a sexual harassment investigation, manufactured evidence against him in order to establish a false claim of sexual harassment, leaked information from the investigation to other employees, and unjustifiably demoted him to the position of store manager in order to promote a woman to his position." 705 A.2d at 628. Finding that the employer's actions fell within the category of "employer-employee conflicts [that] do not . . . rise to the level of outrageous conduct," the Court of Appeals held the plaintiff's allegations insufficient to state a claim of IIED. *Id.* (alteration in original) (internal quotation marks omitted).

But *Kerrigan* does not decide this case. *Kerrigan* did not involve a false report to government authorities. Rather, all of the allegations involved acts that took place within the workplace and that had no consequence other than an adverse

employment action (the plaintiff's demotion). Kassem, by contrast, does not merely plead intra-workplace mistreatment. He further alleges that, after WHC fired him from his position, it intentionally filed a false charge against him with the NRC -- a charge that could have prevented him from working as a nuclear technologist and subjected him to criminal penalties. *See* Compl. ¶¶ 48, 50; *see also* 10 C.F.R. § 30.64 (providing that violations of § 30 are subject to criminal penalties). WHC did so knowing that the charge was false, and with the intention of "avoid[ing] NRC regulatory action against" the hospital itself. Compl. ¶ 51. There is nothing in *Kerrigan* that limits the applicability of *Carter* in such circumstances. Accordingly, Kassem's complaint cannot be dismissed at the pleading stage.

## III

For the foregoing reasons, we affirm the dismissal of the plaintiff's wrongful discharge claim, but reverse the dismissal of his IIED claim.

*Affirmed in part and reversed in part*.