# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 13, 2018      Decided December 18, 2018

No. 17-5225

ELECTRONIC PRIVACY INFORMATION CENTER,
APPELLANT

v.

INTERNAL REVENUE SERVICE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-00670)

*John Davisson* argued the cause for the appellant. *Marc Rotenberg* and *Alan Butler* were with him on brief.

*Michael Murray*, Attorney, United States Department of Justice, argued the cause for the appellee. *Gilbert S. Rothenberg*, *Thomas J. Clark*, and *Geoffrey J. Klimas*, Attorneys, were on brief. *Richard Caldarone*, Attorney, entered an appearance.

Before: HENDERSON and MILLETT, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by Circuit Judge HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Internal Revenue Service (IRS) collects more than money. It acquires and maintains a reservoir of sensitive information about taxpayers. And time was, the President could—for any reason or no reason at all—order the IRS to make that sensitive information public. The arrangement worked out fine for decades. Then the Nixon administration compiled a list of political enemies and ordered the IRS to harass them. The resulting scandal prompted the Congress to enact sweeping legislation to protect taxpayer privacy. The Internal Revenue Code (IRC) now mandates that tax "[r]eturns and return information shall be confidential" unless they fall within one of the statute's narrowly drawn exceptions. I.R.C. § 6103(a).

At first blush, the IRC stands in tension with the Freedom of Information Act (FOIA), which vests the public with a broad right to access government records. 5 U.S.C. § 552(a)(3)(A). One statute demands openness; the other privacy. But as we explain *infra*, the statutes work well together. Not all records are subject to FOIA requests. An agency need not disclose records "specifically exempted from disclosure by statute." *Id.* § 552(b)(3). Because the IRC is such a statute, records that fall within its confidentiality mandate are exempt from FOIA.

This case presents the question whether a member of the public—here, a nonprofit organization—can use a FOIA request to obtain an unrelated individual's tax records without his consent. With certain limited exceptions—all inapplicable here—the answer is no. No one can demand to inspect another's tax records. And the IRC's confidentiality protections extend to the ordinary taxpayer and the President alike. Accordingly, we affirm the dismissal of the Electronic Privacy Information Center (EPIC)'s lawsuit seeking President Donald J. Trump's income tax records.

## I. BACKGROUND

EPIC is a nonprofit organization dedicated to focusing "public attention on emerging privacy and civil liberties issues." A few months after the 2016 election, EPIC sent the IRS a FOIA request seeking President "Donald J. Trump's individual income tax returns for tax years 2010 forward, and any other indications of financial relations with the Russian government or Russian businesses." The IRS declined to comply with the request for two reasons. First, the requested "documents, to the extent that any exist, [] consist of, or contain the tax returns or return information of a third party," which "may not be disclosed unless specifically authorized by law." Second, the IRS's rules require that a request for a third party's tax returns include his consent. *See* 26 C.F.R. § 601.702(c)(5)(iii)(C); *see also* I.R.C. § 6103(c). In fact, the IRS does not process a FOIA request that violates its rules. *Id.* § 601.702(c)(4). Because EPIC failed to obtain President Trump's consent, the IRS did not process the request.

EPIC then sent the IRS a second letter appealing the initial denial and renewing its request for President Trump's above-described tax information. The renewed request invoked 26 U.S.C. § 6103(k)(3),[1] which establishes an exception to the general rule that tax returns and return information are confidential. Under section 6103(k)(3), the IRS may "disclose" return information to correct a misstatement of fact, if doing so is necessary to serve a tax administration purpose.

---

[1] Section 6103(k)(3) provides: "The Secretary may, but only following approval by the Joint Committee on Taxation, disclose such return information or any other information with respect to any specific taxpayer to the extent necessary for tax administration purposes to correct a misstatement of fact published or disclosed with respect to such taxpayer's return or any transaction of the taxpayer with the Internal Revenue Service."

*See* I.R.C. § 6103(k)(3). Before releasing records under section 6103(k)(3), however, the IRS is statutorily required to obtain approval from the Joint Committee on Taxation—composed of members of the Senate Finance Committee and the House Ways and Means Committee. *See id.* § 8002(a). EPIC asserted that President Trump made misstatements of fact about his tax information and about his audit history. In EPIC's view, releasing the President's tax returns would promote public confidence in the IRS.

Again, the IRS declined to process the request, explaining that section 6103 prohibits the release of the requested records "unless disclosure is authorized by Title 26." The second IRS letter stated that section 6103(k)(3) "does not afford any rights to requesters under the FOIA to the disclosure of tax returns or return information of third parties." The letter concluded by telling EPIC "any future requests regarding this subject matter will not be processed."

EPIC soon sued the IRS. Its complaint advanced three claims under FOIA, 5 U.S.C. § 552, and two under the Administrative Procedure Act (APA), 5 U.S.C. § 706. The FOIA claims fault the IRS for failing to meet statutory deadlines for processing record requests (count one), failing to segregate nonexempt information (count two) and wrongfully withholding the President's tax returns and information (count three). The APA claims assert that the IRS wrongfully withheld the President's tax returns (count four) and failed to seek the Joint Committee's approval (count five). The IRS moved to dismiss the complaint and the district court granted the motion. It dismissed the FOIA claims for failure to exhaust administrative remedies and the APA claims for failure to state a claim upon which relief can be granted.

## II. ANALYSIS

We review the district court's dismissal *de novo* and may affirm its judgment on any basis supported by the record. *Citizens for Responsibility & Ethics in Washington v. Office of Admin.*, 566 F.3d 219, 221 (D.C. Cir. 2009); *Parsi v. Daioleslam*, 778 F.3d 116, 126 (D.C. Cir. 2015).

## A. FOIA CLAIMS

FOIA requires federal agencies to make "records promptly available" when a requester files a "request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules." 5 U.S.C. § 552(a)(3)(A). But an agency need not produce records that "fall within one of nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). A FOIA request often seeks a mixture of exempt and non-exempt records. For such a request, an agency must segregate the non-exempt information from the exempt information, disclosing the former but not the latter. 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection"). To withhold records, then, the agency must establish that an exemption applies and, for mixed requests, must still disclose "all reasonably segregable, nonexempt portions of the requested record(s)." *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57–58 (D.C. Cir. 2003).

The IRS invokes exemption 3 of FOIA, which allows an agency to withhold records "specifically exempted from disclosure by statute" if the statute meets certain criteria. 5 U.S.C. § 552(b)(3). Section 6103(a) of the IRC is an exemption 3 provision. *Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C. Cir. 1997) ("That § 6103 is the sort of nondisclosure statute contemplated by FOIA exemption 3 is beyond

dispute."). It mandates that tax "[r]eturns and return information shall be confidential" unless they fall into one of thirteen tightly drawn categories of exceptions.[2] I.R.C. § 6103(a), (c)–(o). We have described the relationship between section 6103(a) and FOIA as "entirely harmonious," concluding that tax returns and return information that section 6103(a) bars from disclosure are exempt from FOIA. *Church of Scientology of California v. IRS*, 792 F.2d 146, 149 (D.C. Cir. 1986). At the same time, the thirteen exceptions to section 6103(a) allow the IRS to disclose certain tax records, *id.*, which records, in turn, are subject to FOIA.

---

[2] Two exceptions are applicable here. As discussed above, section 6103(k)(3) allows for limited disclosure of returns and return information if the Joint Committee first approves of the disclosure and if the IRS determines that disclosing the records to correct a misstatement of fact will serve tax administration. I.R.C. § 6103(k)(3). Section 6103(c) permits a third party to request another's tax return or tax information provided the taxpayer consents. *Id.* § 6103(c). It provides:

> The Secretary may, subject to such requirements and conditions as he may prescribe by regulations, disclose the return of any taxpayer, or return information with respect to such taxpayer, to such person or persons as the taxpayer may designate in a request for or consent to such disclosure, or to any other person at the taxpayer's request to the extent necessary to comply with a request for information or assistance made by the taxpayer to such other person. However, return information shall not be disclosed to such person or persons if the Secretary determines that such disclosure would seriously impair Federal tax administration.

*Id.*

The district court did not decide whether the IRS had met its burden of establishing that President Trump's tax information is exempt from FOIA. Instead, it dismissed EPIC's FOIA claims for failure to exhaust administrative remedies. Although we agree with the district court's bottom-line determination that EPIC is not entitled to relief, we take a different path to get there. *Skinner v. U.S. Dep't of Justice & Bureau of Prisons*, 584 F.3d 1093, 1100 (D.C. Cir. 2009) ("[T]his court can 'affirm a correct decision even if on different grounds than those assigned in the decision on review.'" (quoting *Razzoli v. Fed. Bureau of Prisons*, 230 F.3d 371, 376 (D.C. Cir. 2000), *overruled on other grounds*, *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660 (D.C. Cir. 2013))). As explained *infra*, exhaustion does not bar review of EPIC's FOIA claims. Because EPIC requested only records that are in fact exempt from FOIA, however, we affirm on the merits the dismissal of the three FOIA claims.

## 1. ADMINISTRATIVE EXHAUSTION

The doctrine of administrative exhaustion applies to FOIA and limits the availability of judicial review. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61–62 (D.C. Cir. 1990). A FOIA requester must complete the "statutory administrative appeal process, allowing the agency to complete its disclosure process *before* courts step in." *Id.* at 65. "Although exhaustion of a FOIA request 'is not jurisdictional because the FOIA does not unequivocally make it so,' still 'as a jurisprudential doctrine, failure to exhaust precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar.'" *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam) (citations omitted) (quoting *Hidalgo v. FBI*, 344 F.3d 1256, 1258–59 (D.C. Cir. 2003)).

This is not the ordinary exhaustion case in that the IRS does not claim that EPIC neglected to file an administrative appeal. Nor could it. EPIC appealed the denial of its FOIA request by letter dated March 29, 2017. Instead, the IRS argues that EPIC's requests violated its "published rules." The IRS reads its regulations as requiring that a FOIA requester establish his entitlement to records—in other words, establish that the requested records are not exempt—before the IRS has any processing duty. Because EPIC failed to supply either President Trump's consent or the Joint Committee's approval, the IRS contends that EPIC did not establish its "entitlement" to the requested records, a violation, by its lights, of 26 C.F.R § 601.702(c)(4)(i)(E)[3] or 26 C.F.R § 601.702(c)(5)(iii)(C).[4] That violation, according to the IRS, left EPIC's administrative remedies unexhausted.

As a starting point, we believe the IRS misunderstands its FOIA disclosure obligations. FOIA unambiguously places on an agency the burden of establishing that records are exempt. 5 U.S.C. § 552(a)(4)(B); *Assassination Archives & Research Ctr.*, 334 F.3d at 57–58. To withhold records, then, the IRS must establish that a requester seeks "returns" or "return

---

[3] Section 601.702(c)(4)(i)(E) states: "The initial request for records must . . . [i]n the case of a request for records the disclosure of which is limited by statute or regulations (as, for example, the Privacy Act of 1974 (5 U.S.C. 552a) or section 6103 and the regulations thereunder), establish the identity and the right of the person making the request to the disclosure of the records in accordance with paragraph (c)(5)(iii) of this section."

[4] Section 601.702(c)(5)(iii)(C) provides, in relevant part, that "[i]n the case of an attorney-in-fact, or other person requesting records on behalf of or pertaining to other persons, the requester shall furnish a properly executed power of attorney, Privacy Act consent, or tax information authorization, as appropriate."

information" subject to the section 6103(a) bar on disclosure. The IRS maintains that its "published rules," however, shift that burden to the FOIA requester. *See* 26 C.F.R. § 601.702(c)(4)(i)(E), (c)(5)(iii)(C). Granted, FOIA allows an agency to establish "published rules" governing "the time, place, fees (if any), and procedures to be followed" in making a FOIA request. *See* 5 U.S.C. § 552(a)(3)(A). But the IRS's above-quoted rules do not speak to these purposes; instead they address a requester's substantive right to records. And FOIA specifically places on the agency the burden of establishing that its records are exempt. *Id.* § 552(a)(4)(B). Neither an agency's "published rules" nor its regulations can modify the Congress's clear command. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). Thus, the IRS cannot disregard the plain statutory text and apply its regulations in a way that forces a requester—like EPIC—to establish that records are not subject to section 6103(a)'s disclosure bar.

Even assuming that EPIC's failure to meet the IRS's above-quoted rules counts as a failure to exhaust, exhaustion would not apply here. *See Wilbur*, 355 F.3d at 677 (FOIA's exhaustion bar inapplicable to requester who filed untimely administrative appeal but agency nonetheless considered appeal). Exhaustion applies only if its underlying purposes "support such a bar." *Id.* (quoting *Hidalgo*, 344 F.3d at 1258–59)). The purposes of exhaustion include "preventing premature interference with agency processes, . . . afford[ing] the parties and the courts the benefit of [the agency's] experience and expertise, . . . [and] compil[ing] a record which is adequate for judicial review." *Hidalgo*, 344 F.3d at 1259 (all but fifth alteration in original) (quoting *Ryan v. Bentsen*, 12

F.3d 245, 247 (D.C. Cir. 1993)); *see also* Harry T. Edwards et al., Federal Standards of Review 145 (2d ed. 2013) (discussing purposes of non-jurisdictional exhaustion).

None of the purposes of exhaustion supports barring judicial review of EPIC's claims. The IRS denied EPIC's initial FOIA request, notifying EPIC that its request was closed "as incomplete." EPIC faxed the IRS a letter "constitut[ing] an appeal and renewed request for disclosure of President Donald J. Trump's tax returns." The letter fully explained the basis of EPIC's disagreement with the IRS's initial determination. In response, the IRS again rejected EPIC's arguments and notified it that "any future requests regarding this subject matter will not be processed." The IRS's response manifests that the administrative process had run its course. EPIC gave the IRS the opportunity to reconsider its position and bring its expertise to bear. *Cf. Oglesby*, 920 F.2d at 64 ("Allowing a FOIA requester to proceed immediately to court to challenge an agency's initial response would cut off the agency's power to correct or rethink initial misjudgments or errors."). Its letter explained that section 6103(k)(3) provides EPIC's entitlement to records, obviating any need for President Trump's consent. The letter also set forth detailed allegations about President Trump's misstatements of fact, asserting that "the IRS must exercise its power under § 6103(k)(3)." In short, EPIC followed the administrative appeal process to the limited extent the IRS allowed and was repeatedly met with a closed door. Accordingly, we conclude that exhaustion does not bar review of EPIC's FOIA claims. *Accord Hull v. IRS, U.S. Dep't of Treasury*, 656 F.3d 1174, 1179–83 (10th Cir. 2011) (declining to apply exhaustion where IRS determined FOIA requester violated its published rules and rejected administrative appeal).

## 2. THE MERITS

The IRS urges us to affirm the district court's dismissal on the alternative ground that counts one through three of the complaint fail to state a claim upon which relief can be granted. *See* Fed R. Civ. P. 12(b)(6). In particular, the IRS argues that EPIC's requests seek only those records that are exempt from FOIA and thus EPIC's FOIA claims fail.

To survive dismissal, a plaintiff must "plead 'enough facts to state a claim to relief that is plausible on its face' and to nudge his claims 'across the line from conceivable to plausible.'" *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the IRS's argument, we accept as true all factual allegations in EPIC's complaint. *Kassem v. Washington Hosp. Ctr.*, 513 F.3d 251, 253 (D.C. Cir. 2008). A successful FOIA claim has three elements. The requester must establish (or, at this stage, plausibly allege) that the agency has (1) improperly (2) withheld (3) agency records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). The second and third elements are not in dispute. President Trump's tax returns and return information are "agency records." *See generally Forsham v. Harris*, 445 U.S. 169, 179–87 (1980) (discussing the definition of "agency records"). And the IRS withheld them. EPIC's success, then, turns on whether the IRS's withholding of those records is in error.

The IRS asserts the records EPIC requests are, in their entirety, exempt from disclosure. As noted earlier, section 6103(a) of the IRC is an exemption 3 provision and records falling within its confidentiality mandate are exempt from FOIA. *See Tax Analysts*, 117 F.3d at 611. But section 6103(a) is limited in scope. Not all IRS records constitute tax

returns or return information. *E.g.*, *id.* at 616 (legal analysis included in IRS Field Service Advice Memoranda does not constitute "return information"). And some records that do constitute tax returns or return information can fall within exceptions to section 6103(a). *E.g.*, I.R.C. § 6103(c) (requester may obtain third party's tax records if third party consents); *see also id.* § 6103(d)–(o).

In challenging the IRS's denial decisions as erroneous, EPIC offers two theories. First, notwithstanding the IRS's categorical non-disclosure, some of the requested information (although EPIC never specifies which portions) allegedly does not qualify as "returns" or "return information," *id.* § 6103(a), and thus the IRS violated its duty to segregate and disclose any non-exempt records, *see Assassination Archives & Research Ctr.*, 334 F.3d at 57–58. Second, the requested information allegedly falls under an exception to the section 6103(a) disclosure bar and therefore the IRS wrongfully withheld non-exempt documents. Neither of EPIC's theories works.

### A. SEGREGATION OF NON-EXEMPT RECORDS

We start with its first theory. Section 6103(a) bars the disclosure of tax "[r]eturns and return information." I.R.C. § 6103(a).[5] The first category, "returns," is defined in section

---

[5] I.R.C. § 6103(a) provides:

Returns and return information shall be confidential, and except as authorized by this title—

(1) no officer or employee of the United States,

(2) no officer or employee of any State, any local law enforcement agency receiving information under subsection (i)(1)(C) or (7)(A), any local child

6103(b)(1). [6] The second category, "return information," includes (among other things): "a taxpayer's identity, the nature, source, or amount of his income, [and] . . . whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing." *Id.* § 6103(b)(2)(A). In its request, as noted earlier, EPIC "sought Donald J. Trump's

support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section or section 6104(c), and

(3) no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (e)(1)(D)(iii), subsection (k)(10), paragraph (6), (10), (12), (16), (19), (20), or (21) of subsection (l), paragraph (2) or (4)(B) of subsection (m), or subsection (n),

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

[6] I.R.C. § 6103(b)(1) provides:

The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

tax returns for tax years 2010 forward and any other indications of financial relations with the Russian government or Russian businesses." The first half of the request seeks tax returns and thus is plainly covered by section 6103(a)'s bar.

But what about EPIC's request for "any other indications of financial relations" with Russian entities? IRS records containing the described information could reveal "return information," including the "nature" and "source" of President Trump's income. *Id.* § 6103(b)(2)(A). As the IRS correctly points out, "EPIC has framed its FOIA request in such a way that acknowledging the existence of any responsive documents would itself violate section 6103 by disclosing whether the President has filed income tax returns for the years in question; whether the President has Russian income, assets, expenses, etc.; and/or whether the IRS was, is, or may be investigating the foregoing." Because any response to EPIC's requests would reveal "[r]eturns [or] return information," we agree with the IRS that section 6103(a) prevented the IRS from complying with the requests unless an exception to the disclosure bar applied. *Id.* § 6103(a).

## B. SECTION 6103(K)(3) EXCEPTION

As to the second theory—that President Trump's tax records fall within an exception to section 6103(a)'s disclosure bar—EPIC identifies only one relevant exception, section 6103(k)(3). It provides:

> The Secretary *may*, but only following approval by the Joint Committee on Taxation, disclose such return information or any other information with respect to any specific taxpayer to the extent necessary for tax administration purposes to correct a misstatement of fact published or disclosed with

respect to such taxpayer's return or any transaction of the taxpayer with the Internal Revenue Service.

*Id.* § 6103(k)(3) (emphasis added). The IRS letter denying EPIC's second FOIA request explained that section "6103(k)(3) does not afford any rights to requesters under the FOIA to the disclosure of tax returns or return information of third parties." EPIC disagrees, arguing that upon receiving its FOIA request, the IRS had to determine whether to exercise its section 6103(k)(3) discretion in favor of disclosure.

Our interpretation of section 6103(k)(3) starts "with the plain meaning of the text, 'looking to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Blackman v. D.C.*, 456 F.3d 167, 176 (D.C. Cir. 2006) (quoting *United States v. Barnes*, 295 F.3d 1354, 1359 (D.C. Cir. 2002)). Section 6103(a) makes returns and return information confidential. I.R.C. § 6103(a). Section 6103(k)(3) allows the IRS to "disclose" the otherwise confidential tax information described therein if certain preconditions are met. *Id.* § 6103(k)(3). The preconditions include (1) the IRS's determination that "disclosure" to "correct a misstatement of fact" is necessary to serve a "tax administration purpose[]" but only after obtaining (2) the Joint Committee on Taxation's approval.[7] *Id.* Unless the two preconditions are met, section 6103(k)(3) provides no exception from section 6103(a)'s disclosure bar.

---

[7] EPIC also challenges as unconstitutional section 6103(k)(3)'s requirement that the IRS seek Joint Committee approval. Because we decide that EPIC has no right to records under section 6103(k)(3), we need not decide whether (k)(3)'s approval clause passes constitutional muster.

The statute leaves undefined *when* the IRS must disclose records under section 6103(k)(3) and *to whom*. It does not speak to a *request* for disclosure, whether under FOIA or otherwise. It instead grants the IRS discretion to disclose certain information if the above-described preconditions are met. Even if the preconditions are met, however, the IRS may nonetheless choose not to disclose information. *E.g.*, *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016) ("may" generally grants discretion and does not create a duty to act); *Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("may" is "permissive"). In other words, there is no IRS *duty* to disclose information under section 6103(k)(3). *See Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 335–36 (D.C. Cir. 1987). But the disclosure authority is narrower still. Section 6103(k)(3) instructs the IRS to disclose information only "to the extent necessary for tax administration purposes." I.R.C. § 6103(k)(3). Moreover, the IRS in its discretion can disclose only the information necessary to correct a misstatement of fact that was "published or disclosed" regarding a taxpayer's tax "return" or other "transaction with the" IRS.[8] *Id.*

---

[8] Our interpretation fits with what little we know about the Congress' purpose in enacting section 6103(k)(3). It created the (k)(3) exception as part of the Tax Reform Act of 1976, Pub. L. No. 94-455, § 1202(a)(1), 90 Stat. 1520, 1667–85. It placed the (k)(3) exception in the same statutory subsection as other exceptions that "allow the disclosure of tax information for miscellaneous administrative and other purposes." H.R. Rep No. 94-1515, at 480 (1976) (Conf. Rep.), *as reprinted in* 1976 U.S.C.C.A.N. 4117, 4184–85. While the Tax Reform Act of 1976 was pending, the IRS Commissioner testified to the House Ways and Means Committee about the importance of section 6103(k)(3): "It is extremely important to Federal tax administration that [the] IRS be given discretionary authority to make limited disclosures necessary to

There is scant history of the IRS's use of section 6103(k)(3). The IRC requires the IRS to provide the Joint Committee on Taxation an annual report listing (*inter alia*) "requests for disclosure of returns and return information" and "instances in which returns and return information were disclosed pursuant to such requests or otherwise." *Id.* § 6103(p)(3)(C). In its 2000 report, the IRS listed "[o]ther [d]isclosures" under section 6103(k)(3) as having been made "to/for . . . federal agencies." IRS, *Disclosure Report for Public Inspection Pursuant to Internal Revenue Code Section 6103(p)(3)(C) for Calendar Year 2000* 3 (2001), *available at* https://www.jct.gov/publications.html?func=startdown&id=2 008. In addition, the Internal Revenue Manual includes provisions related to section 6103(k)(3). Internal Revenue Manual § 11.3.11.3 (9-21-2015). The provisions make clear that the (k)(3) disclosure process begins when "field personnel become aware of any situation where a misstatement may warrant correction by the IRS." *Id.* The Manual describes the use of section 6103(k)(3) as "rare" and necessary only if "the misstatement will have a *significant impact* on tax administration." *Id.* (emphasis added). Other than the 2000 "disclosure," the record before us manifests no history of disclosures involving the exception and not one case in which a FOIA litigant sued the IRS for failing to disclose records under it. Indeed, the record before us is silent regarding whether the Joint Committee has ever given its (k)(3) approval

---

protect itself and the tax system against unwarranted public attacks on its integrity and fairness in administering the tax laws." *Confidentiality of Tax Return Information: Hearing Before the H. Comm. on Ways & Means*, 94th Cong. 23 (1976) (statement of Donald C. Alexander, IRS Comm'r). Consistent with this history, we read section 6103(k)(3) as an administrative provision that grants the IRS—with the Joint Committee's approval—discretion to make limited disclosures under limited circumstances. Those circumstances—at least up to now—do not include a FOIA request.

to the IRS. Section 6103(k)(3) is, as the district court aptly put it, a *"rara avis."*

IRC provisions *in pari materia* with section 6103(k)(3) also manifest that, when the Congress intended to allow for public disclosure of IRS records under the exceptions to the section 6103(a) disclosure bar, it knew how to do so. For example, one exception requires the IRS to disclose or permit inspection of a third party's tax returns if certain individuals file a written request. *See, e.g.*, I.R.C. § 6103(e)(1)(E) ("The return of a[n] [estate] shall, upon written request, be open to inspection or disclosure to . . . the administrator, executor, or trustee of such estate, and any heir at law, next of kin, or beneficiary under the will, of the decedent, but only if the Secretary finds that such heir at law, next of kin, or beneficiary has a material interest which will be affected by information contained therein . . . ."). Section 6103 includes thirteen categories of exceptions to the disclosure bar. *See id.* § 6103(c)–(o). Within those exceptions, there are numerous circumstances in which section 6103 authorizes the IRS to disclose a return or return information "upon written request" from certain government officials or private parties. *See, e.g.*, *id.* § 6103(d)(1), (e)(1), (e)(3), (e)(4), (e)(5), (f)(1), (f)(2), (f)(3), (g)(1), (g)(2), (i)(8), (j)(3), (j)(6), (l)(2), (l)(3), (l)(6), (l)(8)(A), (l)(12)(A), (l)(13)(A). In light of these subsections,[9] we presume that the Congress's omission of any public right to "request" disclosure under section 6103(k)(3) is intentional. *Cf. Mount Royal Joint Venture v. Kempthorne*, 477 F.3d 745, 755 (D.C. Cir. 2007) ("[*E*]xpressio unius est exclusio alterius

---

[9] One exception does allow the public to inspect certain return information. I.R.C. § 6103(k)(1) ("Return information shall be disclosed to members of the general public to the extent necessary to permit inspection of any accepted offer-in-compromise"); *see also id.* § 6104 (allowing public inspection of limited records related to certain tax exempt organizations and trusts).

[means] the mention of one thing implies the exclusion of another thing."). However the other section 6103 exceptions work with FOIA, the (k)(3) exception may be *sui generis* in that it affords a FOIA requester no disclosure right. EPIC has therefore failed to state a FOIA claim upon which relief can be granted and we affirm the district court's dismissal of counts one through three of the complaint.

## B. APA CLAIMS

We next turn to the dismissal of EPIC's APA claims. The APA authorizes a reviewing court to set aside final agency action "found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). It also allows the court to compel agency action "unlawfully withheld or unreasonably delayed." *Id.* § 706(1). EPIC advances two APA claims. Count four alleges that the IRS unlawfully closed EPIC's FOIA request and count five alleges that the IRS wrongfully withheld agency action by failing to seek approval of the Joint Committee on Taxation as required by section 6103(k)(3).

### 1. UNLAWFUL AGENCY ACTION

The APA provides a cause of action only if "there is no other adequate remedy in a court." 5 U.S.C. § 704. "[T]he alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005)). Applying the "same genre" standard, we have expressed "little doubt that FOIA offers an 'adequate remedy' within the meaning of section 704." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,

846 F.3d 1235, 1245 (D.C. Cir. 2017). FOIA offers an adequate remedy here.

Count four challenges the IRS's "closure" of EPIC's FOIA requests. EPIC's complaint seeks several forms of relief, including an order requiring the IRS to process the FOIA requests and to disclose all nonexempt records. It does not specify which relief relates to the APA counts and which relates to the three FOIA counts. No matter. FOIA empowers a reviewing court to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant"—the very relief EPIC seeks. 5 U.S.C. § 552(a)(4)(B). We conclude, then, that the district court correctly dismissed count four. *Citizens for Responsibility & Ethics in Washington*, 846 F.3d at 1246 (dismissing APA claim because FOIA provided adequate remedy).

### 2. UNLAWFULLY WITHHELD AGENCY ACTION

EPIC's count five fares no better, even assuming that FOIA does not provide an adequate remedy for that claim. The APA allows a reviewing court to compel agency action "unlawfully withheld" under narrow circumstances. 5 U.S.C. § 706(1). An agency must have failed to perform a non-discretionary duty to act. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). "Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Id.* EPIC claims that the IRS unlawfully withheld agency action by failing to seek approval from the Joint Committee for the disclosure of President Trump's tax information. But the IRS has no *duty* to seek Joint Committee approval. As discussed above, *supra* at 16, section 6103(k)(3) gives the IRS discretion

to disclose records but under no circumstances requires the IRS to do so.

Finally, EPIC argues that the Internal Revenue Manual creates a non-discretionary duty. True enough, an agency can create a non-discretionary duty by binding itself through a regulation carrying the force of law. *Cf. Norton*, 542 U.S. at 65. The Internal Revenue Manual, however, does not do so. *See Marks v. Comm'r of Internal Revenue*, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991) (per curiam). "It is well-settled . . . that the provisions of the [M]anual are directory rather than mandatory, are not codified regulations, and clearly do not have the force and effect of law." [10] *Id.* A non-binding document cannot impose on an agency an enforceable duty to act. *Cf. W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1245 (D.C. Cir. 2018). Accordingly, we believe the district court correctly dismissed count five.

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered*.

---

[10] In any event, the Internal Revenue Manual provisions related to section 6103(k)(3) provide IRS officials with ample discretion to determine whether a misstatement "may warrant correction." Internal Revenue Manual § 11.3.11.3 (2015).